Federal barUNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EFRAIN TAPIA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 22 C 3699 |
| | ) |
| WSA USA, LLC, | ) Judge Sara L. Ellis |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

After a piece of cardboard jammed in a prefeeder machine sold by WSA USA, LLC ("WSA"), Plaintiff Efrain Tapia attempted to remove the jam. While doing so, the prefeeder machine's waste gate closed, seizing and injuring his right hand. Tapia filed this action against WSA and other now-dismissed Defendants alleging negligent and strict products liability. WSA filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Because the open and obvious rule does not serve as an absolute bar to all of Tapia's claims, the Court grants in part and denies in part WSA's motion. The Court allows Tapia's strict liability and negligent design claims to go forward, but enters judgment in favor of WSA on his strict liability and negligent failure to warn claims.

**BACKGROUND**[1]

WSA distributes material handling equipment, including a Dual Inverter Top Prefeeder (the "prefeeder machine"). Companies such as Welch Packaging Group, Inc. ("Welch") use the prefeeder machine in cardboard box manufacturing. Although the prefeeder machine includes

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts. The Court includes in this background section only those facts that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. The Court takes all facts in the light most favorable to Tapia, the non-movant.

many parts, its conveyor belt rollers and waste gate are the only components relevant to this case. When the prefeeder machine encounters cardboard sheets that it deems unsuitable, it opens its waste gate and turns on its conveyor belt rollers to push the sheets out of the prefeeder machine and through an opening at the bottom of the fencing that surrounds the prefeeder machine's waste gate. After the prefeeder machine discards the unsuitable sheets, the waste gate closes.



If needed, an operator can reduce or terminate the prefeeder machine's energy to reach an intermediate-energy state ("IES") or a zero-energy state ("ZES"). An IES disables all the prefeeder machine's pumps, drives, and moving parts, whereas a ZES fully powers down the prefeeder machine. An operator can activate an IES or ZES by removing a safety key that is stuck in a lock and attached to a lanyard—known as a lockout/tagout procedure. An operator also may activate a ZES by pressing a kill switch. It takes about three to five minutes to turn off or lockout/tagout the prefeeder machine.

On or before June 30, 2020, WSA sold the prefeeder machine to Welch. After the sale, William Prause, a Field Service Engineer at WSA, trained Welch's prefeeder machine operators on WSA's equipment. The training spanned four days for ten hours each day and covered safety, operation, and hands-on demonstrations. Prause trained the operators on ZES, IES, and the lockout/tagout procedure, which prohibits operators from going inside or onto the prefeeder machine without the safety key's lanyard on their wrist. He also trained Welch's employees to not put any part of their body inside the fence adjacent to the waste conveyor system without the safety key on their wrist because the waste conveyor system is the most dangerous portion of the prefeeder machine, and the prefeeder machine could kill someone if they move inside the cage without disabling the prefeeder machine.

Tapia had worked at Welch since around 2015, had used the prefeeder machine for approximately three months, and attended one of Prause's prefeeder machine trainings. Including his time at a previous employer, Tapia possessed over thirty years of experience with either the prefeeder or similar machines. Tapia understood that the lockout/tagout procedure prevented parts of the prefeeder machine from moving while an operator performed work on the prefeeder machine, and that failing to follow the procedure could result in injury.

Both at Welch and his former employer, Tapia worked with machines where cardboard would get stuck. While Tapia was working at his former employer, an employee's hand got stuck in a machine's conveyor belt after the employee tried to remove a stuck cardboard piece without turning off the machine. His previous employer then installed a sensor that shut off the machine when an operator opened its fenced door. Tapia understood that he had to open that door to turn off the machine before removing stuck cardboard because attempting to remove a

stuck piece without turning off the machine may result in injury, because the machine could pull in his hand.

In the three months leading up to the incident, Tapia's role was to cut cardboard from its packaging, which a different employee would then load it into the prefeeder machine while Tapia aligned the cardboard and ensured it correctly entered the prefeeder machine. However, the prefeeder machine frequently jammed. For example, during the discard process, a sheet of cardboard may get stuck between the conveyor belt rollers and waste gate. Tapia had seen the prefeeder machine's waste gate jam at least twice, and watched two different coworkers successfully remove the sheets by entering the fenced area and grabbing the cardboard while the prefeeder machine kept running. Because clearing a jam this way took only about thirty seconds, it required less time than formally locking out or shutting down the prefeeder machine.

On June 30, 2020, Tapia noticed a sheet of cardboard stuck between the conveyor belt rollers and the waste gate. Without turning off the prefeeder machine, he crawled under the waste gate's fenced area and attempted to quickly grab and remove the cardboard. During Tapia's effort, the waste gate closed, caught his wrist, and trapped his right hand in the prefeeder machine. To free his hand, others had to remove the roller closest to the waste gate. As a result, Tapia sustained injuries to his hand that required surgical repair.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record.

Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

**ANALYSIS**

"An injured plaintiff may allege one of two types of products liability claims: a strict liability claim or a negligence claim." *Africano v. Atrium Med. Corp.*, No. 17 C 7238, 2021 WL 2375994, at *6 (N.D. Ill. June 10, 2021) (quoting *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 497 (2010)). "The key distinction between the two types of claims lies in the concept of fault. In a strict liability claim, the focus of the inquiry is on the condition of the product itself. A negligence claim accounts for a defendant's fault as well as the product's condition." *Id.*

I.   **Strict Liability (Count III)**

A strict liability claim may proceed under three theories: manufacturing defect, design defect, and failure to warn. *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 548 (2008). Tapia does not specify under which theory he wishes to proceed, although the parties' briefing focuses on design defect and failure to warn. Moreover, in reviewing the complaint, it does not allege facts that support a strict liability manufacturing defect claim. Consequently, the Court addresses only the design defect and failure to warn theories.

A.   **Design Defect**

A "design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Salerno*, 402 Ill. App. 3d at 497 (citing *Blue v. Env't Eng'g, Inc.*, 215 Ill. 2d 78, 89–90 (2005)). Under a design defect theory, a plaintiff must allege: "(1) a condition of the product that results from manufacturing or design; (2) the condition made the product unreasonably dangerous; (3) the condition existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the condition." *Id.* (citing *Mikolajczyk*, 231 Ill. 2d at 543). The key inquiry is whether the allegedly defective condition made the product unreasonably dangerous. *Salerno*, 402 Ill. App. 3d at 498.

The Court applies the consumer-expectation test and risk-utility test to determine whether a product is unreasonably dangerous. *Salerno*, 402 Ill. App. 3d at 498. Under the consumer-expectation test, a plaintiff must prove that the product "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 254 (2007) (quoting Restatement (Second) of Torts § 402A cmt. *i* (1965)). "This

6

is an objective standard based on the average, normal, or ordinary expectations of the reasonable person; it is not dependent upon the subjective expectation of a particular consumer or user." *Id.*

Separately, a plaintiff may demonstrate a design defect under the risk-utility test "by presenting evidence that the risk of danger inherent in the challenged design outweighs the benefits of such design." *Id.* at 255. Factors that courts consider in their risk-utility analysis include the availability and feasibility of alternative designs; conformity with industry standards, voluntary organization guidelines, and governmental regulation; the utility of the product; the safety aspects of the product; and the manufacturer's ability to eliminate unsafe characteristics of the product without impairing its usefulness or making it prohibitively expensive. *Id.* at 260; *Jablonski v. Ford Motor Co.*, 353 Ill. Dec. 327, 343 (2011). When enough evidence exists to implicate both the consumer-expectation and risk-utility tests, consumer expectation becomes one factor in the risk-utility analysis, and the fact finder applies the risk-utility test. *Mikolajczyk*, 231 Ill. 2d at 556–57.

Tapia alleges that the prefeeder machine was unreasonably dangerous because it did not contain sufficient barriers or safety devices to prevent a user's hand from catching in the waste gate. WSA argues that any risk of harm was open and obvious, thus making the prefeeder machine's waste gate not unreasonably dangerous. Tapia responds that an open and obvious condition is not a *per se* bar to a strict products liability design defect action.

Tapia correctly points out that the Illinois Supreme Court has expressly rejected the notion that a product's open and obvious risk of harm serves as an absolute defense to a defective design theory of strict liability. *See Mikolajczyk*, 231 Ill. 2d at 539; *Calles*, 224 Ill. 2d at 262. Instead, courts should consider it as one factor in its risk-utility analysis. *Mikolajczyk*, 231 Ill. 2d at 539–40. Yet WSA rests its entire summary judgment argument on the waste gate's

open and obvious risk of harm, ignoring the various other factors that the Court should consider under the risk-utility test. WSA tries to explain this deficiency in its reply brief by noting that Tapia carries the burden to prove that the prefeeder machine was unreasonably dangerous. Even so, WSA's open and obvious argument fails to fully explain why Tapia unsuccessfully carried this burden, particularly when Tapia responds that he has presented evidence to show that the risks of the prefeeder machine's design outweigh its benefits. While Rule 56 does not require WSA to "support its motion with affidavits or other similar materials *negating* the opponent's claim," it must inform the Court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). WSA presents the open and obvious rule as its only support for why a trial is not necessary, but "the open and obvious danger of a product does not create a *per se* bar to a manufacturer's liability." *Calles*, 224 Ill. 2d at 263.

Perhaps realizing the insufficiency of its initial argument, WSA contends for the first time in its reply brief that Tapia has failed to meet his burden because "he has presented no evidence that the product's design proximately caused his injury or that the design was unreasonably dangerous under the risk-utility test" and then analyzes the test's factors. Doc. 108 at 7–10. But WSA may not raise arguments for the first time in a reply brief. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (affirming the district court's determination that defendants waived argument in summary judgment proceedings because they failed to raise the issue before their reply brief). Accordingly, because WSA failed to sufficiently support its motion for summary judgment on Tapia's strict liability design defect claim, the Court denies its motion under this theory.

B.     **Failure to Warn**

WSA also moves for summary judgment on Tapia's strict liability claim for failure to warn. A failure to warn of a product's known danger or instruct on the proper use of the product may also result in strict liability. *Salerno*, 402 Ill. App. 3d at 497–98. No duty to warn exists, however, where the danger is open and obvious. *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 705 (N.D. Ill. 2017) (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 7 (2002)). "The open and obvious doctrine is an objective inquiry that considers whether a reasonable person with the plaintiff's knowledge of the situation would appreciate the risk and know to avoid the hazard." *Burns v. Sherwin-Williams Co.*, 78 F.4th 364, 371 (7th Cir. 2023). A court should grant summary judgment when sufficient evidence exists to conclude that "a reasonable person would indisputably appreciate the risk posed." *Braxton v. Menard Inc.*, No. 21 C 2198, 2024 WL 3251377, at *5 (N.D. Ill. July 1, 2024).

WSA argues that it need not have warned Tapia to avoid inserting his hand into the prefeeder machine because the danger was open, obvious, and known to Tapia from his employee training. WSA further asserts that a warning would have served no purpose because it was not reasonably foreseeable that an operator would crawl under the opening in the fence and "expose themselves to the very part of the machine they were trained to avoid due to its danger." Doc. 98 at 12. Tapia responds that the prefeeder machine's danger—which he frames as having one's hand pulled into the waste gate—was not open, obvious, or known to him. Although Tapia does not deny a general knowledge of a possibility of injury from the waste gate, he argues that a genuine issue of material fact exists as to whether the waste gate's propensity to pull jammed material back into the assembly was open and obvious. He further disputes whether WSA trained Tapia regarding the waste gate's danger.

9

The Court finds that, as a matter of law, a reasonable person would appreciate the risk posed by the waste gate and know to avoid the hazard. The cases the Court has identified finding a condition to be open and obvious as a matter of Illinois law involve facts such that an individual can easily identify a product's danger. *Compare Dunn v. Menard, Inc.*, 880 F.3d 899, 907 (7th Cir. 2018) (holding, in a premises liability case, that standing near "a sixteen-foot stack of "obviously unstable insulation" is an open and obvious risk); *Sollami*, 201 Ill. 2d at 13 (holding that the danger of falling from a greater height because of double-jumping or rocket-jumping on a trampoline is an open and obvious risk); *Gutterman*, 242 F. Supp. 3d at 703 (holding riding a skateboard inside of a Target creates an open and obvious risk of a fall), *with Haigler as Tr. of Est. of Bolden v. SharkNinja Operating LLC*, No. 23 C 326, 2025 WL 672925, at *8 (N.D. Ill. Mar. 3, 2025) (finding no open and obvious danger because while an ordinary person would understand that a food processor's blade is sharp, it is less clear that they would understand that removing a jammed lid would eject the blade from the food processor). And a court outside this circuit applying comparable law to similar facts found the danger of the conveyor portion of a machine "so open and obvious that no reasonable person would attempt to reach into it and grab the polyethylene feeder material without first shutting the machine off." *Marshall v. Sheldahl, Inc.*, 150 F. Supp. 2d 400, 404 (N.D.N.Y. 2001); *see also Farkas v. Addition Mfg. Techs., LLC*, 952 F.3d 944, 950 (8th Cir. 2020) (holding that the plaintiff placing his hand into the point of operation of a machine that uses a hydraulic clamp to crimp metal tubes is "open, obvious, and apparent"); *Mills v. Curioni, Inc.*, 238 F. Supp. 2d 876, 894 (E.D. Mich. 2002) (holding that the danger of an operator getting his hand caught in a pinch point of a roller area of a cardboard box machine is open and obvious).

10

Here, no dispute exists that a reasonable person with Tapia's knowledge would understand that they should not stick their hand into or near the waste gate area when the prefeeder machine is running because the waste gate could "pinch" or close on their hand. While Tapia argues that a reasonable person would not understand that removing a jammed piece of cardboard could *pull* their hand into the waste gate, he admits that he understood that "his hand could get hurt if he attempted to remove cardboard from a machine while it was still on." Doc. 99 ¶ 64. Tapia also stated in his deposition that either Welch or WSA trained him to turn off the prefeeder machine when cardboard jammed because attempting to remove the cardboard while the prefeeder machine operated could injure his hand. Doc. 99-1 at 12. Further, the parties' joint statement of undisputed facts states that Tapia "got down on his knees and *reached his right hand into the machine* while it was still running" and "the waste gate closed, caught [Tapia]'s wrist, and his hand got stuck in the machine." Doc. 99 ¶¶ 18, 26 (emphasis added). This danger is open and obvious. *See Marshall*, 150 F. Supp. 2d at 406 (granting summary judgment for the defendant on the plaintiff's strict product liability failure to warn claim because the defendant trained employees "not to place their fingers in the machine while it was running" and the plaintiff "chose to walk past each of the machine's emergency stop switches, the main power switch, and the safety trip wire before reaching into the machine's moving parts to correct the faulty splice"). Accordingly, the Court grants WSA's motion for summary judgment on Tapia's strict liability for failure to warn theory.

C.     **Assumption of Risk**

WSA briefly argues that Tapia's supposed "assumption of risk" is an affirmative defense that bars recovery in a strict products liability action, relying on the subjective factors that the Illinois Supreme Court articulated in *Williams v. Brown Manufacturing Co.*, 45 Ill. 2d 418

(1970). WSA cites cases from 1972 and 1978 to further support its assertion. However, the Illinois Supreme Court in 1983 determined that in strict products liability actions, "the defenses of misuse and assumption of risk will no longer bar recovery. Instead, such misconduct will be compared in the apportionment of damages." *Coney v. J.L.G. Indus., Inc.*, 97 Ill. 2d 104, 119 (1983). Because assumption of risk does not bar recovery for strict products liability claims as a matter of Illinois law, the Court denies WSA's motion for summary judgment on this theory.

## II.     Negligence (Count IV)

WSA next moves for summary judgment on Tapia's negligence claim. Like a strict products liability claim, a negligence claim in a product liability case also may proceed under three theories: manufacture, design, and failure to warn. *See Hakim v. Safariland, LLC*, 410 F. Supp. 3d 862, 871 (N.D. Ill. 2019) (analyzing the defendant's motion for summary judgment on the plaintiff's negligence claim under all three types in a product liability case). Tapia does not specify which type of negligence claim he seeks to bring. But in his complaint, Tapia does not allege facts that support a negligent manufacture claim, and both parties in their summary judgment briefing treat Count IV as only a negligent design and failure to warn claim. The Court therefore will analyze only these two theories. However, regardless of the specific theory, a product liability claim based in negligence falls within the framework of common law negligence. *Calles*, 224 Ill. 2d at 263. As such, a plaintiff must establish for both theories "the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Id.*

### A.     Negligent Design

The "key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." *Jablonski*, 353 Ill. Dec. at 343. But first, a plaintiff

must establish the existence of a duty. In determining the existence of a duty, Illinois courts consider four factors: (1) the foreseeability of injury, (2) the likelihood of injury, (3) the magnitude of guarding against the injury, and (4) the consequences of placing the burden on the defendant. *Blue*, 215 Ill. 2d at 105. The open and obvious rule mitigates a party's duty to protect another from a potentially dangerous, yet open and obvious, condition. *Bruns v. City of Centralia*, 386 Ill. Dec. 765, 770 (2014). Where the parties do not dispute the physical nature of a condition, whether the dangerous condition is open and obvious is a question of law. *Id.* at 771. Importantly, a finding that a condition is open and obvious does not itself preclude the existence of a duty. *Id.* Rather, courts use the open and obvious rule in evaluating the first two factors of the duty inquiry: the foreseeability and likelihood of injury. *Id.* The open and obvious nature of a condition reduces the reasonable foreseeability and likelihood of injury because it is reasonable for a defendant to expect that a plaintiff will avoid an open and obvious danger. *Id.* at 775–76. Courts then consider the magnitude and consequences of placing a burden on a defendant. *Id.* Though generally "the open and obvious nature of the danger posed by a product in a negligence case is not an absolute bar," the open and obvious nature of the danger may negate any duty in a particular case when appropriately raised by a defendant on a motion for summary judgment. *Blue*, 215 Ill. 2d at 104.

   Both parties repeat arguments made in the strict liability sections of their briefs. WSA argues that the Court should grant it summary judgment on Tapia's negligent design claim because the prefeeder machine's danger was open, obvious, and known to Tapia, negating any duty that WSA owed to Tapia. Tapia contends that the open and obvious nature of the prefeeder machine's danger is not an absolute bar to a negligent design products liability claim, and that

13

the prefeeder machine's propensity to pull a person's hand into the waste gate was not an open, obvious, and known danger.

For the same reasons as discussed above, the Court concludes that the prefeeder machine's dangerous condition was open and obvious. On that basis, Tapia's injury resulting from the purported design defect was not reasonably foreseeable nor likely, because it was reasonable for WSA to expect that Tapia would not have crawled under the fence and stuck his hand in the waste gate area and that Tapia would have avoided the injuries he suffered. *See Gutterman*, 242 F. Supp. 3d at 705 (finding that the danger presented by a skateboard's claimed design defect was open and obvious, and so the plaintiff's injury was not reasonably foreseeable or likely under the duty analysis). The Court therefore concludes that the first two factors in the duty analysis weigh against imposing a duty on WSA.

This leaves the magnitude of the burden of guarding against the injury and the consequence of placing that burden on WSA. WSA does not address either of these factors in its brief, which Tapia pointedly notes in his response brief. While WSA correctly claims that it is not WSA's burden to disprove negligence, its sole reliance on the open and obvious nature of the prefeeder machine's danger is insufficient for this Court to reach a judgment as a matter of law. *See Calles*, 224 Ill. 2d 247, 271 (rejecting the defendant's argument that "because of the [open and obvious] nature of the danger, no duty exists on their part as a matter of law, and they are entitled to summary judgment" because "the open and obvious nature of a danger is just one factor in evaluating whether a manufacturer acted reasonably in designing its product. It is not dispositive."); *Salerno*, 402 Ill. App. 3d at 502 (noting that, when considering the plaintiff's negligent design defect claim, "the circuit court erred in granting summary judgment based on the van's open and obvious risk of harm"). Consequently, because WSA exclusively relies on

14

the open and obvious rule to argue that it did not owe Tapia a duty, the Court denies WSA's motion for summary judgment on Tapia's negligent design claim.

### B. Failure to Warn

When analyzing whether a duty exists under a negligent failure to warn theory, Illinois courts have stated that "clearly, no duty to warn exists in a products liability case where the danger is apparent or open and obvious," *Blue*, 215 Ill. 2d at 101, because "when a risk is obvious or generally known, the prospective addressee of a warning will or should already know of its existence," *Id.* at 102 (citing Restatement (Third) of Torts: Products Liability § 2, cmt. *j*, at 31 (1998)). Whether a duty to warn exists is a question of law for the Court. *Ramm v. W & D Mach. Co.*, No. 92 C 7478, 1994 WL 445576, at *3 (N.D. Ill. Aug. 12, 1994).

The parties again reiterate their arguments for and against the prefeeder machine's open and obvious nature. Because the Court has already found the waste gate's danger open and obvious, it grants WSA's motion for summary judgment on Tapia's negligent failure to warn claim.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part WSA's motion for summary judgment [98]. The Court enters judgment for WSA on Tapia's strict and negligent failure to warn claims.

Dated: April 22, 2025

SARA L. ELLIS  
United States District Judge